(No. 6935. January 19, 1942)

ADDIE BENNETT, Appellant, v. NEW YORK LIFE INSURANCE COMPANY, Respondent.

(121 Pac. 2d) 551)

Eugene H. Anderson, C. Stanley Skiles, and Pete Leguineche, for Appellant.

Richards & Haga, for Respondents.

AILSHIE, J.—This action was instituted by Addie Bennett, (appellant) as beneficiary against the New York Life Insurance Company (respondent), to recover disability benefits under insurance policy issued by the company, May 21, 1929, on the life of Elmer J. Bennett. The policy provided for payment, in case of death, in the sum of $3,000, also double indemnity under specified cir-

cumstances and total disability benefits to insured under specified conditions.

Proof of death was duly made and the death benefit of $3,000 was paid to appellant, the beneficiary. Claim for disability benefits was made and also claim for return of premiums paid by insured during disability.

So much of the insurance contract, as is thought to be material or important in the consideration of this case, is set out in the footnote hereto.[1]

An amended complaint was filed to which demurrers were interposed and sustained. The plaintiff declined to further plead and judgment of dismissal was entered, from which this appeal has been prosecuted.

For the purposes of our present consideration of the case, the allegations of the complaint must be accepted as true. The initial payment of $102.33 was made at the time of the issuance of the policy and all premiums were thereafter paid as they became due; and the policy was in full force and effect on the date of insured's death. Bennett,

---

[1] "This contract is made in consideration of the application therefor and of the payment in advance of the sum of $102.33, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this Policy for the period terminating on the Twenty-first day of May Nineteen Hundred and thirty, and of a like sum on said date and every Twelve calendar months thereafter during the life of the Insured. . . .

"Disability shall be considered total whenever the Insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the insurance under this Policy took effect and before the anniversary of the Policy on which the Insured's age at nearest birthday is sixty.

"*Upon receipt at the Company's Home Office, before default* in payment of premium, of *due proof* that the Insured is totally disabled as above defined, and will be continuously so totally disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability, but establishes that the Insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has been totally disabled as above defined, *the following benefits will be granted:*

"(a) WAIVER OF PREMIUM.—*The company will waive the payment of any premium* falling due during the period of *continuous total disability,* the premium waived to be the annual, semi-

the insured, died March 24, 1939, leaving surviving him the appellant, who was named as beneficiary under the policy; that, on April 10, 1939, following the death of the insured, the beneficiary "gave due notice, and made proof, to the defendant at its home office" of the "permanent total disability of the said Elmer J. Bennett."

The plaintiff also alleged that insured was suffering from "permanent disability continuously from April 19, 1933, up to and including the date of his death, and that disability benefits were due under the policy at the time of his death in the sum $2130." Plaintiff further alleged "That the said Elmer J. Bennett during the period of continuous disability, . . . . paid to the said defendant premiums in the amount of $102.33, for each premium, for the years 1933, 1934, 1935, 1936, 1937, and 1938; that under and by reason of the terms and conditions of said policy of life insurance, the payment of each of said premiums was waived by the said defendant, and that there is now due, owing, and unpaid from the defendant to

---

annual or quarterly premium according to the mode of payment in effect when disability occurred.

"(b) INCOME PAYMENTS.—The Company will pay to the Insured the monthly income stated on the first page hereof ($10 per $1,000 of the face of this Policy) for each completed month from the commencement of and during the period of continuous total disability. If disability results from insanity, payment will be made to the beneficiary in lieu of the Insured.

"*In event of default in payment of premium after the Insured has become totally disabled as above defined,* the Policy will be restored and the benefits shall be the same as if said default had not occurred, *provided due proof that the Insured is and had been continuously* from date of default so totally disabled and that such disability will continue for life or has continued for a period of not less than three consecutive months, is received by the Company *not later than six months after said default.* . . . .

*Before making any income payment or waiving any premium, the Company may demand due proof of the continuance of total disability,* but such proof will not be required oftener than once a year after such disability has continued for two full years. *Upon failure to furnish such proof,* or if the Insured performs any work, or follows any occupation, or engages in any business for remuneration or profit, *no further income payments shall be made nor premiums waived.* . . . . Any disability benefit due but unpaid at the time of the Insured's death shall be payable *to the person entitled to the proceeds of the Policy.*" (Italics supplied.)

plaintiff, because of payment of premiums made by the said Elmer J. Bennett while he was mentally incompetent and incapable to understand or comprehend his rights and duties .... the sum of $613.98."

As excuse and justification for failure of the insured to give notice to the company of his disability, it was alleged that, after the issuance of the policy and on April 19, 1933, the insured "developed and suffered from pernicious anemia"; and "by reason of said pernicious anemia and attendant disorders and complications arising from and connected therewith, became totally and permanently disabled, and from the said 19th day of April, 1933, until his death on the 24th day of March, 1939, the said Elmer J. Bennett was wholly prevented from performing any work or following or engaging in any occupation or business for remuneration or profit, and that from the 19th day of April, 1933, and continuously thereafter, the said Elmer J. Bennett, because of and by reason of the complications connected with and resulting from said pernicious anemia was so disordered in mind and memory that he was incapable and incompetent to attend to or transact his ordinary business affairs, .... "

As further justification for failure on the part of the insured or the beneficiary, to give notice to the company of the insured's disability, it is alleged:

"That the said policy of life insurance was issued by the said defendant, as aforesaid, without the knowledge and consent of the plaintiff. That at the time of the issuance of the said policy of life insurance, said Elmer J. Bennett placed said policy of life insurance in a safety deposit box at the First Security Bank of Idaho, at Mountain Home, Idaho. That until after the death of the said Elmer J. Bennett, this plaintiff did not have access to said safety deposit box, or to said policy of life insurance, and that until after the death of the said Elmer J. Bennett, this plaintiff had no knowledge whatsoever of the terms and conditions of said life insurance policy."

For our present purposes, permanent disability of the insured, for the period alleged, is admitted, as is also his failure to give notice to the company of such disability. It is likewise admitted that the *insured* made the regular

annual payments from the time of the issuance of the policy until his death; and that, at the time of his death, the policy was in full force and effect.

The question that we are called upon to determine and decide is, whether the insured and the benefiicary are excused for their failure to give notice of total disability, as provided for under the terms of the contract, so as to entitle the beneficiary to recover disability benefits and return of premiums paid during disability.

While this case presents a new question in this court, it is not new to the courts of many of the states. There seems to be abundant authority construing and determining the rights of beneficiaries under insurance contracts practially identical with the one here under consideration. The decisions on the subject are too numerous to analyze in the space of an opinion. We will only call attention to a few of the leading authorities relied upon by the respective parties.

Appellant places great reliance on *Johnson v. Mutual Life Ins. Co. of New York,* (C. C. App. Va.) 70 Fed. 2d 41, 293 U. S. 540, 55 Sup. Ct. 86, 79 L. ed. 646; aff., 293 U. S. 335, 55 Sup. Ct. 154, 79 L. Ed. 398; *McCoy v. New York Life Ins. Co.,* 219 Iowa 514, 258 N. W. 320; *Leavitt v. New York Life Ins. Co.,* 230 Iowa 456, 297 N. W. 888, 892; and *Pfeiffer v. Missouri State L. Ins. Co.,* 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600.

In the Johnson case, the United States Circuit Court of Appeals for the Fourth Circuit had under consideration a policy containing substantially the identical language contained in the policy here under consideration. After reviewing and citing a number of cases, the court concluded as follows:

"The situation is one where the parties may fairly be said to have contemplated a capacity to make the proof when disability should arise, for otherwise such a contract may prove a trap for the unwary by imposing conditions which incapacity may render it impossible to perform. There is, it is true, no language in the condition which qualifies it in the event that its performance should become impossible; but it is a general rule in the law of contracts, that impossibility may excuse a condition,

though a condition precedent, if the existence or occurrence of the condition is no material part of the exchange for the promisor's performance, and the discharge of the promisor will operate as a forfeiture."

In the McCoy case, the Iowa supreme court had under consideration substantially the same provision issued by respondent herein. In that case the Iowa supreme court seems to have placed its chief reliance on the Johnson case, supra, and cited many cases in support thereof, concluding as follows:

"It must be kept in mind that it is the general rule, of practically universal application that forfeitures are not favored in this country, and that insurance contracts will be construed most strongly against the insurer. There can be no doubt that the New York Life Insurance Company knew when it wrote the policy which it issued to the insured, Raymond E. McCoy in this case, if the insured became insane he could not give notice. Where it is impossible, as it was in this case, to give notice, it may be fairly said that the insurance company contemplated that no notice would be given. Disability having occurred while the policy was in full force and effect, it being impossible for the insured to give the notice, the New York Life Insurance Company is liable on the policy which it wrote and for which it received the premium it demanded."

In *Leavitt v. New York Life Ins. Co., supra,* the giving of notice was considered, as regards a different provision of the contract, but the court again considered the Johnson and McCoy cases, supra, and appears to have adhered to the rule announced by those cases.

In the Pfeiffer case, *no notice of disability* was given as required by the terms of the policy. The court held that failure to give notice was not fatal to recovering disability benefits; and that the requirement for notice was a *condition subsequent.* The court said:

"The clause of the policy with respect to giving notice of permanent disability of the insured is a condition subsequent and, as we have already seen, should be construed liberally in favor of the beneficiary. The condition of the policy in respect to giving notice of permanent disability

as well as making proof of death operates upon the contract subsequent to the fact of loss. The insured has done all that he can do towards carrying out his part of the contract, and the liability of the company under the terms of the policy has attached. Nothing remains to be done except to give the company notice of its liability and make proof thereof. If the insured has become permanently insane at the time the permanent disability attaches, it is evident that he is in no condition of mind to give the notice or make proof of his disability. Hence, if the policy in such case is to receive a liberal and reasonable construction in favor of the beneficiaries, it should be said that permanent insanity, which causes in whole or in part permanent disability, should operate to excuse the insured from giving the required notice."

Many other cases are cited to the same effect as above.

There are many cases on which respondent relies in support of its contention, that *proof of notice is a condition precedent* and must be given before the insured is entitled to have the premium waived and the policy continued in force and receive his disability benefits. We call attention to excerpts from some of the cases which seem to be in point.

In *Lucas v. John Hancock Life Insurance Co.*, 116 Pa. Super. Ct. 298, 176 Atl. 514, 515, the Pennsylvania court had under consideration a provision for waiver of premiums very similar to the one here involved and, among other things, said:

"The furnishing of proof of an existing disability under a policy of insurance containing a requirement that satisfactory proof be furnished the company, is a condition precedent to a waiver of the premiums, *Courson v. N. Y. Life Insurance Co.*, 295 Pa. 518, 145 A. 530, and a policy which requires due proof that the insured is and has been continuously and totally disabled is not effective until such proof is furnished. *Brams v. New York Life Insurance Co.*, 299 Pa. 11, 148 A. 855. The conclusion which we have reached, that the furnishing of proof of disability is a condition precedent, is the same conclusion reached under policies of insurance construing similar rights by the decisions in the following cases: [citing cases] and

although we find some contrary opinions, we believe the weight of authority to support our conclusions.

"Plaintiff's right to the refund of premiums cannot be distinguished from his right to disability prior to the receipt of due proof. The waiver of the payment of further premiums is based upon the disability, proof of which is a condition precedent. To be entitled to a waiver of premiums, he must be suffering from a disability, which is not determined until the due proof has been furnished."

The foregoing case was cited and followed in *Farmers Trust Co. v. Reliance Life Ins. Co. of Pittsburgh,* 140 Pa. Sup. Ct. R. 115, 13 Atl. 2d 111, the court holding that "the furnishing of the proof of disability is a condition precedent."

In the consolidated cases of *Sherman v. Metropolitan Life Ins. Co.* and *Bruce v. New York Life Ins. Co.,* 297 Mass. 330, 8 N. E. 2d 892, 894, the Supreme Judicial Court of Massachusetts had this same question under consideration and said:

"In the Sherman case no obligation existed for any period more than six months before such receipt. In the Bruce case no obligation existed for any period before such receipt. These two cases, arising separately, present the question whether, under the policies in question, an actually disabled insured, is entitled to disability payments, without furnishing the 'due proof' required by the policy, for such period as his physical or mental disability prevented him from furnishing or causing to be furnished such 'due proof.'

"There is no rule that an insured is excused from the performance of a condition precedent of his policy, and entitled to freedom from a lapse or forfeiture of his rights, because of the fact that his non-performance of the condition was the result of his incapacitating mental or physical condition. That is especially true of the condition that premiums shall be regularly paid, for 'prompt payment and regular interest constitute the life and soul of the life insurance business.'

" '*The obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made*

*a condition precedent to an assumption by it of payment
of the premiums becoming due after the receipt of such
proof.'* The case of *Shea v. Aetna Life Ins. Co.* (Mass.)
198 N. E. 909, differs from that case and from the present
cases." (Italics supplied.)

In *Goldman v. New York Life Ins. Co.*, 115 N. J. Eq.
535, 171 Atl. 541, 544, the New Jersey court of chancery
had under consideration this provision, known as the
"waiver of premiums clause" and, after reviewing a
great many cases, said:

"A great majority of the courts hold that even insanity
or incapacitating sickness of the insured, because of
which he fails to pay, when due, a premium or assessment
on an insurance policy, will not excuse such failure so as
to prevent a forfeiture, termination, or suspension of his
rights where the policy or rules of the company expressly
provide for such forfeiture, termination, or suspension in
the event of nonpayment. . . .

"I find, therefore, on this phase of the case, that the
defendant was entitled to proof of disability before the
waiver of premium clause became effective, and that no
proof of disability was offered until December 31, 1930,
at which time complainant was over 60 years of age and
therefore not entitled to the benefit of the clause."

This same question arose in *Reynolds v. Travelers' Ins.
Co.*, 176 Wash. 36, 28 Pac. 2d 310, 314. The supreme court
of Washington discussed the question at some length, re-
viewed some of the leading authorities and stated reasons
that are pertinent and convincing, as well as applicable
to the present case. We quote at length from the opinion:

"While, upon first thought, this rule may be considered
harsh, it has very substantial reason to support it. Prompt
payment of premiums is of the very essence and substance
of the contract, against which the courts may not grant
relief. While sickness or insanity of the insured may
render it impossible for him to pay the premium, it does
not render payment wholly impossible, because it may be
paid by others for him. Sickness or insanity of the in-

sured is not considered to be such an act of God as will excuse failure to make prompt payment of premiums.

"Now, if insanity does not excuse the failure to pay premiums, then there can be no good reason why it should excuse the failure to furnish proof of disability. It is the proof of disability that excuses the failure to pay the premiums. The very purpose of disability insurance is to provide an income during such disability, not to accumulate a fund for the benefit of a third party beneficiary. Such disability includes insanity and other forms of mental incompetency. Hence, when the insured takes out such insurance, he is called upon to make provision, as he easily may and usually does, for a contingency that may render him unable, personally, to make proof. There are very potent reasons why this should be the rule. If the time for making proof be not confined to the period during which the policy is in force, then the beneficiary may wait until the insured has died and afterwards claim that the disability took place years before. The insurer would thus be put in a position where it would be almost impossible to make an investigation of the true facts of the situation. The practical effect would be that an insurance company would be compelled to carry every lapsed or forfeited policy as a contingent liability until after the death of the insured. All actuarial computations would thus be upset, and the amount of proper reserves could never be determined. We therefore must hold that the incapacity of the insured furnished no excuse for the failure to make due proof during the time that the policy was kept in force by the payment of premiums."

In *Conlon v. Northern Life Ins. Co.,* 108 Mont. 473, 92 Pac. 2d 284, the supreme court of Montana, in considering the question as to what constituted "due proof of loss," said:

" .... due proof of loss is a condition precedent to right of recovery of any loss arising under policy unless waived."

The fact is worthy of note and deserves some consideration, that the respondent herein, New York Life Insurance Co., is a New York corporation, engaged in the general life insurance business; that it was incorporated

under the laws of New York and is subject to the supervision and control of the laws of that state. The decisions of the courts of New York, with reference to the provisions of this company's insurance contracts, and their construction, should elsewhere afford, at least persuasive reasons for following the construction and application of the various provisions of these contracts. The contract here under consideration has often been before the New York courts. As recently as 1935, in the case of *Mutchnick v. John Hancock Mutual Life Ins. Co.*, 284 N. Y. Supp. 565, 576, the court made a rather exhaustive and lucid examination and review of this subject and some of the leading cases cited by both parties to the present action. Among other things, the court quoted at length and with approval from *Lucas v. John Hancock Mut. Life Ins. Co.*, *supra*, and said, inter alia:

"There are many cases which rule both ways. Examination of the many cases which have been cited by counsel for both parties discloses that those courts which found an ambiguity were courts which have not held that the filing of proof was a condition precedent to the accrual of a cause of action no matter what the language, contained in the policy, was. They are decisions of jurisdictions where the neglect of the insured to furnish proof was excused. This court does not believe this theory sound. To formulate such principles of law as a guide would be to subject insurers to the unwarranted and unfortunate situations referred to in *Goldman v. New York Life Ins. Co.*, *supra*, and *Iannarelli v. Kansas City Life Insurance Co.*, *supra*. The possibility of fraud is too great.

"The terms of the policies in suit are clear. Under these provisions the insured was not entitled to any disability benefits or to the waiver of any premiums for any period of time prior to the date upon which due proof of such disability was furnished to the defendant."

In *Iannarelli v. Kansas City Life Ins. Co.*, 114 W. Va. 88, 171 S. E. 748, the supreme court of West Virginia said:

"With the greatest deference to the learning and high authority of the courts which adopt a holding that the giving of notice or the furnishing of proof of disability

is a condition subsequent, we are of the opinion that in reaching such conclusion the contract between the insurer and the insured has sometimes been relegated to a position of secondary importance instead of there being accorded to it the primary importance to which it is entitled."

In the note to *New York Life Ins. Co. v. Alexander*, 122 Miss. 813, 85 So. 93, 15 A. L. R. 314, 318, and prior to the appearance of many recent decisions on the identical question before us, the annotator made the following statement in reference to *insanity furnishing an excuse for failure to make premium payments:*

"The rule appears to be well settled that insanity or incapacitating sickness of the insured, because of which he fails to pay, when due, a premium or assessment on an insurance policy, will not excuse such failure so as to prevent a forfeiture, termination, or suspension of his rights, where the policy or the rules of the company expressly provide for such forfeiture, termination, or suspension in the event of nonpayment."

On the general topic of insanity affording an excuse for failure to make payments or to comply with the provisions of the policy, the author of 29 Am. Juris. p. 362, sec. 433, says:

"The rule appears to be well settled that in the absence of any provision of the policy for suspension of premiums during the disability of the insured, the insanity or incapacitating sickness of the insured, because of which he fails to pay a premium or assessment on an insurance policy, when due, will not excuse such failure so as to prevent a forfeiture, termination, or suspension of his rights, where the policy or the rules of the company expressly provide for such forfeiture, termination, or suspension in the event of nonpayment. The courts have taken the position that, since payment of premiums and assessments may be made by others, and need not be made by the insured personally, his insanity or sickness should not relieve against the effect of nonpayment. This position seems clearly correct, unless there is something in the nature of insurance contracts which should distinguish them from contracts generally and prevent the application of the general doctrine above indicated, and the courts

have not pointed out any reasons why this class of cases should constitute an exception. Moreover, where a policy provides for the payment of premiums by the beneficiary, the mental incapacity of the insured at the time fixed for the payment of a premium does not excuse delay, even though the insured has not informed the beneficiary of the existence of the policy." (See also sec. 434, p. 363, id.)

The foregoing review of authorities suffices to bring us face to face with the issue as to which line of authorities we will follow in this state. More definitely stated, we are confronted with the problem, as to whether we will hold the provisions contained in the insurance contract, requiring proof before waiver of premiums in payment of disability compensation, as a *condition precedent or subsequent*. In the language of Justice Sutherland of the Supreme Court of the United States, in *Bergholm v. Peoria Life Ins. Co.*, 284 U. S. 489, 76 L. ed. 416:

"Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of *proof* of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums *becoming due after the receipt of such proof*. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy."

In many of the cases cited by appellant, and in the argument of appellant's counsel, great stress has been placed on the contention, that it became *impossible* for the insured to give the notice of disability as required by the terms of the contract; and for that reason, the beneficiary should be excused for the failure of the insured to give such notice. The conclusion, however, is a *non sequitur*. It is true that an insured may become so disabled, either physically or mentally, as to be unable to *make payments* or *give notice* of his disability. But that circumstance is not peculiar to insurance contracts any more than any other contract. It is an everyday occurrence for men to enter into contracts which they cannot *personally* perform, or give the notices agreed upon; but it becomes their duty to make arrangements with an agent, employee, or other representative or beneficiary, to

see that the contract or obligation is carried out and complied with. Failure to do so affords no excuse or justification for breaching the contract; it rather demonstrates its importance.

It seems to us that, where one seeks and obtains an insurance contract, containing stipulations such as are contained in the contract under consideration, it becomes his duty to apprise the beneficiary or someone else of the contract and its general nature and his own obligations, as well as the obligations of the insurance company. At any rate his failure to do so should not be chargeable to the company. If a man buys an insurance contract, puts it away and tells no one about it; and, after a series of years, neglects or fails to make payment of premiums or fails to comply with other requirements of the contract, it is his neglect and should not be chargeable against the company.

It is contended here that as a result of pernicious anemia the insured became mentally "incapable of understanding or comprehending his rights and duties under the terms of said policy of insurance, or his relations thereto, paid to the said defendant premiums," etc.

The implication is, that the insured made his premium payments, from time to time, covering this six-year period of his alleged disability, *because he was not mentally capable of understanding* his rights under the policy and appreciating the fact that he was not obliged to pay premiums under his existing condition; and, on the other hand, he did not have the mental perception to understand and appreciate the fact that he should give notice and make proof of his disability in order to excuse himself for failure to make payments of premium.

It may be said that the insured could not foresee and should not be required to anticipate that he might sometime go crazy and, in order to guard against such contingency, should appoint an agent or servant to perform any necessary acts he might be unable to perform himself. But there is nothing unreasonable about such a requirement; the necessity could just as well arise through accident, contagion, some form of disease, travel on the ocean highways, or any one of many contingencies

that could arise. Furthermore, the contract, immediately following the requirement for proof of disability, provides, specifically, that disability benefits, resulting from "insanity, .... will be made to the beneficiary in lieu of the insured," but makes *no mention whatever of waiver* of notice by the beneficiary of the disability of the insured.

██ An insurance contract is just as binding and sacred as other contracts; and it is essential to the very life and existence of life insurance companies that premiums be paid in accordance with the terms of the contract. The companies are held to a strict accountability to the policy holders and must pay sick, disability and death benefits promptly, when and wherever liability attaches. The company owes it as a duty to its policy holders to exact premiums and to collect them to the end that they may at all times be able to pay benefits in accordance with the obligations they assume to their policy holders. Perhaps no other kind of contract affects the daily life and economic welfare of so large a percentage of our people as do insurance contracts; and it is of vast importance that those who buy policies, as well as the companies that sell them, observe and abide by the plain, unambiguous terms of the contract.

The contract says that:

"Upon receipt *at the Company's Home Office, before default in payment* of premium, of *due proof* that the Insured is totally disabled .... the following benefits will be granted.... The company will waive the payment of any premium *falling* due during the period of continuous total disability."

It does not say payments past due will be waived but premiums *"falling* due"; not *have fallen.*

It appears from the contract that two events must concur before a legal right or cause of action accrues, viz., *disability* and *proof* of disability.

The policy contains further provision for restoration of a lapsed policy which says:

"In event of *default in payment* of premium after the Insured has become totally disabled .... the Policy will be restored and the benefits shall be the same as if said default had not occurred, *provided due proof* that the in-

sured *is* and *has been* continuously *from date of default* so totally disabled and that such disability will continue for life or has continued for a period of not less than three consecutive months, is received by the Company *not later than six months after said default."* (Italics supplied.)

So, it will be seen that the contract provides a method of restoring and continuing the policy in force where premium was not paid, when due, on account of disability, but limits the time for making *proof* of disability to, "not later than six months" *after the default in making payment.*

■ Much has been said about the law's abhorrence of forfeitures. This, however, is not a case of forfeiture. One can not forfeit that which he never had. Forfeit means the loss of something one previously had a right to; "To incur loss through some fault, omission, error, or offense." (Black's Law Dictionary; Webster's New Internatl. Dic.) One may easily fail to get something desired or promised through failure to do something precedent thereto. This is a case where the insured might have acquired an extra benefit by performing a certain act. He failed to perform the act which, under the contract, would have procured him the benefit. He failed to avail himself of the privilege which his contract accorded him.

The case at bar illustrates the danger and unwisdom of adopting a rule that would excuse proof of insanity until *after* the *death* of the insured. The total disability of the insured began April 19, 1933, and continued for five years, eleven months and five days, until the death of the insured, who in the meanwhile had been regularly paying the premiums on the policy. During this time the company had no notice of the alleged insanity of the insured and, of course, no opportunity or reason for investigating his mental or physical condition,—rather, the regularity of premium payments would justify the company in assuming that no cause existed for either waiver of premiums or liability for disability benefits. No reason for inquiry or investigation confronted the company. We hold that furnishing proof of disability, as called for by the contract, is a condition precedent to waiver of pre-

mium. It follows that premiums paid under such conditions can not be recovered.

Judgment affirmed, with costs to respondent.

Givens, C.J., Budge, Morgan and Holden, JJ., concur.